Daniel, J.
I have experienced no serious difficulty in coming to the conclusion that the appellant has wholly failed to make out a case on her original bill.
I am not prepared to say that the period had not arrived when to postpone any longer a sale of the farm would have involved a plain disregard, by the executor, of the testator’s intentions.
The second, third and fourth clauses of the will, as also the first portion of the fifth clause, would seem to indicate a purpose, on the part of the testator, to leave it to the discretion of his executor either to sell the farm immediately on the expiration of the term of five years, during which the appellant was to have the possession and management of it, or to defer a sale thereafter as long as in his opinion the interest of the family would be promoted by its being retained in the possession of the appellant. But in the last member of the fifth clause, after expressing his “ anxious desire” that his boys, on arriving at suitable ages, should be bound out by the executor, to learn good trades, the testator directs that if either one of them prefers an education, the executor, if he deems it advisable, is to apply a part of the share of such son in the estate to that purpose; such part to be deducted from his share, on his attaining the age of twenty-one years : “ at which time or age (the will proceeds) it is my desire that each of my children sharing and sharing alike, shall receive his or her fair proportion of the whole of my real estate.”
The will of the testator was proved and ordered to be recorded at the April term of the County court of Augusta, 1847, and the advertisement of the sale of the farm is dated the 28th of April 1852. The term of five years, during which the appellant had a right to hold the farm, independent of any consent on the part of the executor, had therefore expired. The bill of injunction filed by the appellant appears to have *546 been sworn to on the 3d, and to have been filed on the 18th of May 1852. And in the answer of the ex- • ecutor, sworn to and filed on the 7fch of June 1852, he states, that “ the oldest child is (then) nearly of age, and will be of age within a few months ; at which time, according to the will, he will be entitled to receive his share of the estate.” And he asks, “How is that share to be given him, or how is he to be compensated for the delay in receiving his portion, upon the idea that by such delay the rest of the family will be rendered more comfortable ?” “ The property (he continues) is not increasing; no profits are made. It was this view of the subject which influenced the respondent in determining the question left to his discretion.” As to the fact, stated by the executor, in respect to the age of the oldest child, I fake it there was no dispute. In truth, in her amended bill filed on the 27th of January 1853, Mrs. Dixon admits that Franklin Dixon, the oldest son, came of age in the month of September preceding.
In the testimony of the numerous witnesses who were examined as to the management of the farm by Mrs. Dixon, and as to whether the interests of the family would probably be promoted by her being allowed to retain the possession for a longer period, there is much conflict. Several of them, who seem to be men of observation and experience in such matters, think that the farm has been judiciously managed, and express the decided opinion that the interests of all the children would be promoted by Mrs. Dixon’s continuing to retain the possession and management. On the other hand, several others of them, whose means of forming a judgment, apparent candor in • stating their reasons, &c. would seem to entitle their views of the matter to an equal degree of consideration, regard the management of the farm, of the children, and of the concerns and interests of the family, *547 by Mrs. Dixon, as in many respects wanting in proper judgment, and give it as their opinion that the interests of all the parties concerned would be best pro.moted by allowing the executor to proceed to an immediate sale; whilst there are yet others, apparently equally worthy of credit, who, seeing no material difference in the management of affairs by Mrs. Dixon, from that pursued by her husband in his lifetime, think that the interests of the children grown and of those nearly grown, would be promoted by a sale at once, and that the interests of the younger children would be best cared for by allowing Mrs. Dixon to retain the management and apply the proceeds of the farm to supporting and rearing them; as had been done in the case of the older children.
The charge in the bill, that the executor, in determining to make a sale of the farm, was prompted by a desire to advance his own pecuniary interest, rather than by a regard to the interests of the family, derives no support or countenance whatever from the evidence ; and there is an entire absence of any thing to show that his conduct was actuated by any improper bias, or wish to advance the interests of the older children at the expense of Mrs. Dixon and the younger children.
In such a state of things there would appear, to my mind, to be a strong semblance, if not of usurpation, at least of uncalled for and improper exercise of power, in a chancellor’s interfering and undertaking to substitute his discretion in the place of that of the executor.
As already intimated, it would require a very liberal interpretation of the will in favor of the pretensions of the appellant, to hold that the matter of proceeding to make a sale of the farm was, at the time of the filing of the bill, any longer optional with the executor, and had not become, by reason of the ap *548 preaching majority of the oldest son, a peremptory duty. And if this difficulty were out of the way of the appellant, it seems to me quite clear that the powers with which the testator designed to clothe the executor, if net of a character purely discretionary, resting wholly on opinion and judgment, and therefore belonging to a class of powers over which courts, of equity generally disclaim all control, at least partake so strongly of that character as to make the exercise of such control dependent upon its being shown that the executor was proceeding to act not upon an honest judgment and a sound discretion, but upon some fraudulent or improper motive, or clear mistake of duty.
This has not been shown. I see nothing in the case from which to infer that the executor has not been governed by a sincere, impartial and just regard to the interests of all concerned. And I think that the Circuit court properly refused to stay a sale any longer» on the grounds taken by the appellant in her original bill.
Several questions arising upon, the amended bill, remain to be considered.
The first of these is: Has Mrs. Dixon, upon a proper interpretation of her husband’s will, a just claim; to the provisions therein made for her, and also a right to have dower assigned her in his estate ?
The general principles in reference to which this question must be considered* are few and well ascertained, notwithstanding the precedents disclose much apparent conflict in the opinions of judges engaged in the task of applying those principles to the special facts and circumstances of particular cases.
The cardinal doctrines upon the subject are clearly and concisely stated by Vice Chancellor Kindersley, in the case of Gibson v. Gibson, 17 Eng. L. & E. R. 349. The first principle (he says) is, that the doctrine of *549 election is founded on the same reasons and governed by the same rules when applied to a widow claiming dower, as when applied to any other case. The second ■ proposition, as applicable to all cases, is, that a person, who is entitled to any benefit under a will or other instrument, must, if he claims that benefit, abandon every right or interest the assertion of which would defeat, even partially, any of the provisions of that instrument. And applying this"to the case of dower, the doctrine is, that if the testator has made such a disposition of his real estate, as that the assertion by the widow of her right to dower would prevent that disposition taking effect as the testator intended, then she must elect to abandon either her dower, or the benefit given her by the will. The third proposition is, that in no case is a person to be put to an election, unless it is clear that the provisions of the instrument, under which he is entitled to any benefit, would be, in some degree, defeated by the assertion of his other rights. And therefore, in the particular case of dower, unless it is beyond reasonable doubt that the assertion by the widow of her right to dower would prevent the giving full effect to the testator’s intention, the widow shall not be put to her election. It is not enough (he continues) to say that upon the whole will it may fairly be inferred that the testator intended his widow should not have her dower; in order to compel her to elect, the court must be satisfied that there is a positive intention, either express or clearly implied, that she is to be excluded from dower. He adds, as a fourth proposition, that the intention to exclude the widow from dower must be apparent on the face of the will itself.
To the extent of the first three propositions, as I understand them, the doctrine upon the subject is the same in Virginia as in England. The fourth proposition, however, restricting the search for the testator’s *550 intentions to the face of the will (whatever may be the state of the law upon that subject'in England) has been so far modified in this state by our statute and the decisions of our courts as to allow the circumstances of the testator and the relative situation of the parties to be referred to as evidence, in all enquiries touching the true interpretation of the will. Ambler & wife v. Norton, 4 Hen. & Munf. 23; Herbert and others v. Wren, 7 Cranch’s R. 370.
The rule with us in respect to the admissibility of extrinsic evidence to explain a will generally, as stated by Judge Lee, in the case of Wootton v. Redd's ex'or, 12 Gratt. 205, is, that in expounding wills, “ extrinsic evidence may be resorted to for the purpose of showing the situation of the testator and the state of his family and of his property at the time of making his will.” And he adds, that “generally, evidence may be received, as to any facts known to the testator which may reasonably be supposed to have influenced him in the disposition of his property, and as to all the surrounding circumstances at the time of making the will.”
There are dicta of English chancellors to the effect that, in order to put the wife to her election, it must appear from the will that her right to dower was present to the mind of the testator, and that his dispositions were made in reference to it, and with a purpose to exclude it. And there are expressions in the latter part of Y. C. Kindersley’s statement of his third proposition, which, if taken alone, would seem to countenance such an idea; But when we look to his whole statement, I think it quite clear that he meant to affirm nothing further on that head than what was said by Lord Alvanley in French v. Davies, 2 Ves. jr. R. 572, viz: that the testator must appear to have the wife’s rights in mind, and mean to bar her, or that what she demands is repugnant to the disposition. This *551 idea of the necessity of a presence of a wife’s rights to the mind of the testator, was urged by counsel in the case of Parker v. Sowerby, 27 Eng. L. & E. R. 154, but was rejected: the chancellor observing that to raise a case of election against a wife provided for by the will, nothing more was required than that it should be apparent upon the will that the intention of the testator was to dispose of his property in a manner which was inconsistent with the right to dower.
It has been frequently said by learned judges and law writers that the implication which puts the widow to her election, must be a clear and necessary one.
Dangan, Oh., in the case of Bailey v. Boyce, 4 Strobh. Eq. R. 84, whilst stating the law very strongly in favor of the rights of widows, still thought it proper to explain what he understood and intended by a necessary implication. “ There is (he said) of course some latitude here as to what is a necessary implication or inference. A necessary implication or inference arising on the face of a will or deed, I apprehend, unless words have lost all certainty, means a construction the converse of which would be unreasonable, far-fetched and forced.” And it is, I take it, in the sense of this definition that expressions of the kind have been usually employed.
In saying in the case of Higginbotham v. Cornwell, 8 Grratt. 83, that “ the conclusion against the claim of the widow ought to be as satisfactory as if it were expressed,” Judge Baldwin has, as I humbly conceive, stated the doctrine somewhat too strongly. A rule thus rigid, whilst it formed no necessary foundation for the judgment of the court in that case, would, in my opinion, come in conflict, with decisions in numerous cases which have been too long and too generally recognized as precedents, to allow of dissent or doubt in respect to their authority now. There are comparatively very few of the reported cases, wherein impli *552 cations of the testator’s intentions have prevailed in putting the widow to her election, in which it could be truly said that the conclusion against the claim of the widow was as satisfactory as if the testator, in the very terms of the devise, had expressed an intention to exclude it. And I think it fairly results from the authorities, that whenever the inference against the widow’s right is clear beyond reasonable doubt; whenever the implications against her are so strong, that, to defeat them, resort must be had to a forced, far-fetched or unreasonable construction of the will, a case is made which puts her to her election.
The case of Wiseley v. Findlay, 3 Rand. 361, is cited in the petition for the appeal as authority for the propositions, that a devise by a husband to his wife of his whole lands for years, even if expressly declared in the will to be in lieu of dower, would not, though she took the lands under the will, be such a jointure as could bar her right of dower. And that no provision made for her in her husband’s will, in personal estate, though accepted, can bar a widow of her dower in his real estate. On a reference to the case it will be seen that no such propositions were decided by the court; though it is true that dicta to that effect were made by Judge Green in the course of his opinion. Judge Tucker, in vol. 1 of his Commentaries, at p. 74-5, remarks at some length on the case of Wiseley v. Findlay; and at p. 75, he says, “ It is very certain that in that case, the provision being by will, it was no absolute bar, if the wife chose to renounce it; which she might have done, notwithstanding more than a year had elapsed from her husband’s death ; as the act requiring such prompt renunciation did not apply to her dower right. Still we are not precluded, I presume, by the opinion of the court in that case, from giving to the act a construction which would make even personalty a bar to dower, when properly settled by way *553 of jointure. Thus, if before marriage a woman of full age enters into articles with her intended husband, by which ten thousand dollars in stock are settled upon her in lieu of dower, I should have no doubt it would operate an absolute bar under the broad terms of our act, unless indeed they shall be narrowed down by judicial legislation. See Ambler v. Norton, 4 Hen. & Munf. 23. And so, though a devise of ten thousand dollars either expressly or by averment in lieu of dower, is no absolute bar (since the wife is not bound by the will of her husband), yet it will so far operate as a jointure under the act, that she will be compelled to make her election and relinquish either the dower or the bequest.” At p.75-6, he observes further, “To constitute the jointure an absolute bar, the act also requires that it must take effect immediately on the husband’s death, continue during her own life, and be determinable only by such acts as will forfeit her dower at common law. Yet observe, if it wants these requisites, the widow cannot take both. If she demands her dower, the estate conveyed in lieu of it shall cease.” The first of the propositions thus stated by Judge Tucker, has in effect been recently decided by this court in the case of Findley’s ex’ors v. Findley, 11 Gratt. 434; on which a wife was held to be barred by an agreement in contemplation of marriage, wherein the husband covenanted and bound himself, his heirs, &c. to pay her, if she survived him, certain sums of money, to be received by her in bar of, and in full compensation for her dower. The other propositions stated by him are, I think, equally just and correct. The question in such cases, whether the wife shall be put to her election, does not turn on the character of the estate, as whether real or personal, in which the provision is made for her. The true enquiries are, Is it manifest that the provision was intended to be in lieu of dower ? Or, Is it clear that the claim of dower conflicts with *554 the devise to another, of the subject in which the dower is claimed ?
As has been already intimated, however, whilst the general principles underlying questions of the kind, can no longer be regarded as subjects of serious controversy, yet,' in the application of the principles to the cases, much conflict in the decisions will be found to exist. Not unfrequently, cases in which the implications of the testator’s intention to exclude the claim of dower have been adjudged sufficiently strong to put the widow to her election, are found to be distinguished from others where the opposite result has been arrived at, by features of little mark or prominence. And in some classes of cases, the conflict of decisions is direct, the opposing judgments growing out of the different degrees of weight allowed by different judges to facts of the same or a like character. Thus, in numerous cases it has been decided, and may be regarded as clearly settled by the English decisions, that when a .testator merely devises all of his lands to be sold and a part of the proceeds to be paid to his wife; or where, after making bequests or devises to his wife, he devises the residue of his estate or the balance of his lands to others; no such implication arises of an intention on the part of the testator to exclude the widow’s claim to dower in such residue or balance of the real estate, as will put her to her election. It is said that the claim to dower does not, in either of such cases, come plainly in conflict with the intentions of the testator in respect to other objects of his bounty; that except where he has plainly indicated a purpose to do so, it is not to be presumed that he has designad to give away rights that do not belong to him; that such devises do not in terms import any thing more than all of the testator’s interest in the subjects given.
In the case of Foster v. Cook, 3 Brown. C. C. 347, *555 Lord Thurlow met the argument, that by the devise of “ all my estates,” the testator meant to exclude the claim of the widow, with something of irony in the remark — “ Because the testator gives all his property to the trustees, I am to gather from his having given all he has, that he has given that which he had not.”
In the case of Gibson v. Gibson, already cited, Y. C. Kindersley, after citing the foregoing observation, pursues the answer to arguments of a like character, with a few additional pointed remarks. “ When it is recollected (he says) that it is only because the lands are his that the wife is entitled to dower out of them at all, it would be strange if his describing them as his should have the effect of excluding her from her right to dower. She is entitled to dower only because the lands are his ; and the argument is, that because he describes them as his he meant to deprive her of dower.” Still, upon the question whether the widow is put to her election by an annuity payable out of all the testator’s estates or lands, the decisions have not been uniform. There is probably a preponderance against putting her to an election in such cases; but there are many well considered decisions the other way. And yet it is not easy to perceive any material difference, in the reasoning applicable to such cases, from that which was received as so satisfactory in the class of cases first mentioned.
And yet again, in cases where the testator has devised all his estates, or all his lands, or the residue of his estates or lands, to trustees, with power to lease, the English chancery court, after much discussion and some conflict of decisions, seems now to have come to the settled conclusion that the wife, in such cases, if provided for to any extent by the will, must make her election. Kindersley, Y. C. in the case of Parker v. Sowerby, 21 Eng. L. & E. R. 39, said, that there was a series of cases which decide that although a devise of *556 all a testator’s estates is no proof that the testator did not mean his wife to enjoy dower also, inasmuch as ■ all his estates meant only what was his own to devise, yet a devise upon trust to manage a farm, or the giving a power to lease lands, had been considered indicative of an intention to deprive the widow of her rights, which, in the absence of such a power or trust, she would be entitled to claim. The cases on this subject (he said) were too numerous and uniform, and their authority too high to allow him to hold, at the present day, that the principles to be deduced from them were not the established law. The case before him, he further observed, came within the authority which had been cited, subject, however, to the observation, that the right to dower arose out of a particular freehold estate, while the benefit the widow received was out of the personal estate, and from an annuity charged on an estate different from that out of which dower was claimed. Now, the rule (he said) was this : “ If a testator devises any portion of his real estate in such a manner that the claim of dower would defeat that intention, then the widow is put to her election, if there were even the slightest benefit — a gold watch for instance — conferred upon her by the same instrument.” And his decree was in accordance with the foregoing views.
In the case, however, of Warbutton v. Warbutton, 23 Eng. L. & E. R. 415, coming on the year after (1854), before Stuart, V. C., he made a directly opposite decree. In the course of his opinion he said, that the power of leasing might be a strong circumstance, but that it was not enough to put the widow to an election : and he endeavored to show, that in Parker v. Sowerby, the opinion and decree had proceeded from a misapprehension of the decisions on which they were founded. This decree in Warbutton v. Warbutton induced the defeated party in the case of Parker v. Sow *557 erby to take an appeal in that case. In the Court of appeals, consisting of the Lord Chancellor Cranworth and Vice Chancellors Turner and Knight Bruce, the subject was fully discussed, and the entire line of authorities examined and reviewed. The views of Y. C. Kindersley were fully sustained, and his decree affirmed by a unanimous court.
There is still,, however, a further class of cases, which, as I conceive, bears more directly on the one before us than any to which reference has yet been made. In the case of Miall v. Brain, 4 Madd. R. 68, where the testator devised his estate to trustees, with directions to permit his daughter to use, occupy and enjoy a certain freehold house for her life. The vice chancellor held, that the testator contemplated for his daughter the personal use, occupation and enjoyment of the house, which was inconsistent with the widow’s right to dower therein. And the widow was put to her election.
A like decree was made in the case of Butcher & wife v. Kemp, 5 Madd. R. 61. The facts of the case are stated with sufficient detail, in the opinion of the vice chancellor, to show its application to this. “ The testator (he said) directs that his trustees shall stand possessed of the farm, which he describes as containing about one hundred and thirty-six acres, during the minority of his daughter, upon trust to carry on the business thereof, or to let the same upon lease for her benefit, as they should think best; and for that purpose, gives them all his stocks, cattle and implements on the farm. The question is, whether the testator can be considered as speaking of his interest in the farm subject to his widow’s claim of dower. His plain intention is, that his trustees should, for the benefit of his daughter, have authority to continue his business in the entire farm which he himself occupied, consisting of about one hundred and thirty-six acres; and *558 this intention must be disappointed, if the widow could have assigned to her a third part of this land.” Like view's prevailed in the case of Roadley v. Dixon, 3 Cond. Eng. Ch. R. 356. The analogy between that case and the one under consideration, will be seen in the following brief extract from the opinion of the lord chancellor: “ After devising his real estate generally, the testator adds, ‘ And upon further trust, that they my said trustees do and shall, during the minority of my said son, occupy and manage the farm now in my own possession, employing a proper person as bailiff to superintend the same.’ The farm in the testator’s own possession was the farm at Searby; and it formed a very considerable portion of the whole of the property which he held in Searby. It was the intention of the testator, therefore, that that farm at Searby should be occupied and managed by his trustees, and that they should take possession and hold possession of it. To assign that part of the property for dower, setting it out by metes and bounds, would be inconsistent with such an intention.”
The case of Birmingham v. Kirwan, 2 Sch. & Lef. 444, to the extent of the opinion and decision respecting the house and “demesne of 170 acres,” in which dower was claimed, may be ranged in the same class of cases. See also Taylor v. Taylor, 20 Eng. Ch. R. 727; and Lowes v. Lowes, 26 Eng. Ch. R. 501.
Testing this case by the foregoing precedents, I do not think that the claim of the widow, to its whole extent, can be justly sustained. The directions in the second and third clauses of the will, that the widow shall retain possession of the farm for the space of five years after the testator’s death, and manage it in the best possible manner: that the family, including the testator’s mother, shall be all kept together and maintained and supported from the proceeds of the farm: that the education of the children shall be *559 attended to and paid for out of said proceeds: and that, in order that the widow shall have the means of thus conducting the farm, she shall receive and retain out of the personal estate the negro Dick and other personal property, to the amount of five hundred dollars in value, all tend to show that the testator intended that -the farm in its entirety should be held by the widow, and enjoyed by her and the family as a home: that the farm as one entire undivided concern should be cultivated, controlled and managed by her; and that the proceeds of the whole of it should constitute a fund in her hands to be by her appropriated to the support of herself and the family, and the education of the children. When with these intrinsic evidences of intention we couple the facts that the children were ten in number, and several of them of tender years, and that the farm was a small one, the implication of the testator’s intention to exclude dower in the farm during the five years and until the executor, in the exercise of his discretion, should proceed to a sale, becomes so strong as to admit of no reasonable doubt. We may I think safely conclude (as was said by the chancellor in Birmingham v. Kerwan), in respect to “the house and demesne” in that case, that the testator intended the widow to retain possession of the whole farm “under a right created by the will, and not part of it, under a right which she had previously had, and part under the will.” She could not, during the space of time above mentioned, have taken a third of the farm to her own exclusive use, without breaking in upon a scheme in which others had, under the will, a beneficial interest. The children had an interest, an essential interest, in the proceeds of the farm» Their support, maintenance and education are not referred to, and treated, by the testator merely as motives or inducements leading to the devise to the *560 widow, but are coupled with it as a trust and imposed upon it as a charge.
No doubt or cloud is thrown over the indications of the testatoi’’s intentions, to be collected from the second and third clauses of the will, by the language which he has employed, in the fourth clause, in directing the sale of the i-eal estate. If this direction, and the further dii’ection to pay the widow one thousand dollars out of the proceeds of the sale, constituted the only .provisions in which the testator set forth the position which he intended her to occupy in respect to his real estate, the rights which he wished her to have therein after his death, there would be room to ai’gue that the case came within the influence of the first class of decisions to which i-eference has been had. In such a state of things, it might be said that the expression, “ my executor is vested with full power and authority to dispose of all my real estate in fee simple, in as full and large a manner in every respect as I could myself do if living,” did not show a clear purpose to bar the widow of her dower, inasmuch as the testator, “ if living,” would have i?b “ power or authoi'ity” to dispose of her right thereto; and that hence no conflict could arise from the widow’s claiming both her dower and the thousand dollars. But, as we have seen, such is not the case. And there is no rule which requires us to cull out from the will the expi'essions most favorable to the pi’etensions of the widow, and, rejecting the explanations furnished by other poi’tions of the will, to treat such expi’essions as the controlling indications of the testator’s intentions. The provisions which the testator has made for his wife and children out of the products of his real estate for the five years after his death, and out of the proceeds of the sale thereof after the expiration of that period, are closely .connected parts of one entire scheme. And when we *561 read those provisions in the connection in which they were written, and in the light of the circumstances by which the testator was surrounded ; when we see that the farm on which he lived constituted the whole of his real estate ; that the provision which he makes for his widow out of it is liberal, having regard to its value; and that the shares which the children are to receive respectively out of the proceeds of the sale, after the payment of the one thousand dollars to the widow, constitute, at best, but very scanty provisions for their support and education and outfit; the ambiguity of expression in the clause in question is cleared away, and we are led to a conclusion, satisfactory beyond all reasonable doubt, that the testator intended his wife to have no other rights in the subject than those conferred upon her by the will.
I concur therefore in the opinion of the Circuit court, that the widow is not entitled to dower in the land, and at the same time to the legacy of one thousand dollars given her by her husband’s will out of the proceeds of the sale of the land. But I do not think she has done any thing which deprives her of the right to make her election now. Her retaining possession of the farm after her husband’s death, does not of itself furnish conclusive evidence of her having elected to accept the provisions made for her by the will. Her possession down to the period of the advertisement of the farm for sale by the executor was, unexplained, conduct of an equivocal character, susceptible of reference, either to her rights as the widow of the testator, or to rights conferred upon her by his will. No state of things has grown out of her action in the matter, to disturb which now, would work wrong or injury to others. It is true, that in her bill she discloses the fact that in retaining possession she had been acting under her husband’s will, but under her husband’s will, as she construed and understood it. She states in the *562 bill, that bad sbe not conceived herself entitled under the will to retain the.farm to enable her to raise the children, she would have renounced the will,, and claimed that share of her husband’s estate to which she would have been entitled by law. It is true we have already expressed our concurrence with the judge of the Circuit court in the opinion that the construction of. the will for which she contends is not the true one. But we have no reason for supposing that she did not in fact interpret the will as she says she did ; or that she did not in good faith shape her conduct by such interpretation. I think we shall act in thorough accordance with the decisions on the.subject, in holding that the widow has not yet made an irrevocable election. See Streatfield v. Streatfield, Leading Cases in Eq. 65 Law Lib., notes at p. 271, 289; Upshaw v. Upshaw, 2 Hen. & Munf. 381, and Taylor v. Browne, 2 Leigh 419.
Upon the whole, I am of the opinion to reverse the decree, and remand the cause for further proceedings in accordance with the principles herein declared, and with liberty to Mrs. Dixon to make her election between ber dower in the land and the legacy of one thousand dollars, which the executor is directed to pay her out of the proceeds of the real estate.
The other judges concurred in the opinion of Daniel, J.
Decree affirmed in part, and reversed in part.